UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SERGEI S. YATES, INDIVIDUALLY AND AS
SOLE BENEFICIARY OF THE CHARLES B.
YATES 1998 IRREVOCABLE TRUST NO. 2
AND THE SERGEI S. YATES SETTLEMENT
TRUST,

Plaintiff,

- against -

ROY D. YATES, WINIFRED BENCHLEY,
PNC BANK, AND ROBERT J. DELTUFO,
ESQUIRE,

Defendants.

Civil Action No.:
13-CV-03951 (PGS-TJB)

---

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT ROBERT J. DEL TUFO'S
MOTION TO DISMISS THE AMENDED COMPLAINT**

---

GREENBERG DAUBER EPSTEIN & TUCKER
A Professional Corporation
Edward J. Dauber (ED 9360)
Linda G. Harvey (LH 8862)
One Gateway Center - Suite 600
Newark, New Jersey 07102-5311
(973) 643-3700

Attorneys for Defendant
Robert J. Del Tufo

*On the Brief:*
Edward J. Dauber, Esq.
Linda G. Harvey, Esq.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................... ii

PRELIMINARY STATEMENT .................................................... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ........................... 4

ARGUMENT .................................................................. 10

POINT ONE
THE PLEADINGS FAIL TO STATE A CLAIM AND THE
COMPLAINT SHOULD BE DISMISSED ......................................... 10

    A.    Plaintiffs' Claims Are Clearly Time-Barred ........................... 11

    B.    Plaintiffs' Claims Are Barred By Equity And
        Principles of Estoppel ............................................ 12

    C.    Mr. Del Tufo Is Not a Trustee ..................................... 14

    D.    The Vague Claims Regarding The Wyoming
        Trustee Are Baseless And Fail to State A Claim ........................ 15

POINT TWO
WHILE THE AMENDED COMPLAINT SHOULD BE
DISMISSED, IF IT IS NOT, THE FEDERAL COURT IS
AN INAPPROPRIATE VENUE FOR THIS CASE AND
THE ISSUES SHOULD BE DECIDED IN THE STATE COURT ..................... 17

    A.    This Court Should Abstain From Exercising
        Jurisdiction ..................................................... 17

    B.    The Federal Court Case Is Plagued With
        Problems That Bar Jurisdiction ..................................... 22

CONCLUSION .............................................................. 23

## **TABLE OF AUTHORITIES**

CASES

*Baker v. Urban Outfitters, Inc.*
431 F. Supp. 2d 351 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*BIL Mgmt. Corp. v. N.J. Econ. Dev. Auth.*
310 Fed. Appx. 490 (3rd Cir 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Burlington Coat Factory Sec. Litig.*
114 F. 3d 1410 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Chiampi v. Bally's Park Place, Inc.*
No. 05-3395 (JEI), 2007 U.S. Dist. Lexis 9010 (D. NJ 2007) . . . . . . . . . . . . . . . . . . . . 19

*Colo. River Water Conservation Dist. v. United States*
424 U.S. 800 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Crosley Corp v. Hazeltine Corp*
122 F. 2d 925 (3d Cir. 1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Garcia v. Kozlov, Seaton, Romanini & Brooks, P.C.*
179 NJ 242 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Gautreau v. A.O. Smith Corp.*
34 F. App'x 962 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Grunwald v. Bronkesh*
131 N.J. 483 (N.J. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Hedges v. United States*
404 F.3d 744 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hoatson v. New York Archdiocese*
No. 05 Civ. 10467(PAC), 2007 WL 431098 (S.D.N.Y. Feb. 8, 2007),
*aff'd* 280 F. App'x 88 (2nd Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Jerista v. Murray*
185 N.J. 175 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*
   342 U.S. 180 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Lamb v. Barbour*
   188 N.J. Super. 6 (App. Div. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Lazzarino v. Kenton Associates, Ltd.*
   998 F. Supp. 364 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Levy v. Aaron Faber, Inc.*
   148 F.R.D. 114 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Lum v. Bank of Am.*
   361 F.3d 217 n.3 (3d Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*McGrogan v. Till*
   167 N.J. 414 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Morse v. Lower Merion Sch. Dist.*
   132 F.3d 902 (3d Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*
   460 U.S. 1, 103 S. Ct. 927, 74 L.Ed.2d 765 (1983) . . . . . . . . . . . . . . . . . . . . . . . . 20

*Pension Benefit Guar. Corp. v. White Consol. Indus.*
   998 F.2d 1192 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Phillips v. County of Allegheny*
   515 F.3d 224 (3d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Pittsburgh v. W. Penn Power Co.*
   147 F.3d 256 (3d Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Puder v. Buechel*
   183 NJ 428 (N.J. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Rajenda v. Chertoff*
   2009 No. 07-5988 (SRC), WL 331420 (D. N.J. Feb. 10, 2009) . . . . . . . . . . . . . . . . 10

*Rogers v. Cape May Cnty Office of the Pub. Defender*
   208 NJ 414 (NJ 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

-iii-

*Scheuer v. Rhodes*
 416 U.S. 232 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Sensient Colors, Inc. v. Allstate Ins. Co.*
 193 NJ 373 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Three Keys Ltd. v. SR Util. Holding Co.*
 540 F. 3d 220 (3d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Tormo v. Yormark*
 398 F.Supp. 1159 (D. N.J. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Trustees of Princeton Univ. v. Trust Co. of New Jersey*
 22 NJ 587 (1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Tullet Prebon, PLC v. BGC Partners*
 No. 09-5365 (SRC), 2010 U.S. Dist. LEXIS 60783 (D. N.J. June 18, 2010) . . . . . . . . . . . . . . 22

*Yang v. Tsui*
 416 F. 3d 199 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

RULES & STATUTE

Fed. R. Civ. P. R. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Fed. R. Civ. P. 11(b) (1) and (3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Local Fed. R. 11.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 18

Fed R. Civ. P. 19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

N.J.S.A.§ 14-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## PRELIMINARY STATEMENT

The claims asserted by Plaintiff Sergei Yates ("Sergei")[1] against his former lawyer, Robert Del Tufo, demonstrate the old saying that no good deed goes unpunished. Following the tragic death of Sergei's parents and siblings in a plane accident in 2000, Mr. Del Tufo represented Sergei in a hard fought will contest action and a wrongful death action, involving the five children from Sergei's father's first marriage as well as claims by various members of his mother's extended family. The controversy was factually and legally difficult, particularly because Sergei's father, who with his second wife adopted Sergei from a Russian orphanage at the age of 10, had specifically treated Sergei less favorably in his will than his natural children. Nevertheless, the case ultimately settled in 2004 with Sergei receiving many millions of dollars in trusts. A Memorandum of Understanding Settlement Agreement was reached in August 2004 and the court held a hearing to approve the settlement on August 16, 2004, resulting in an Order Approving Settlement on September 28, 2004. (Dauber Decl. Ex. 1, Am. Compl. Exs. B & C.)

At the time of his parents' death, Sergei was 16 years old. By the time the will construction case and wrongful death action were settled, Sergei was 20 years old. (Dauber Decl. Ex. 1, Am. Compl.Ex. B ¶11.) As set forth in the Order Approving Settlement, the court heard the testimony of Sergei regarding the settlement of the will construction action in which Sergei agreed with the settlement. Moreover, the court approved the settlement and made findings concerning the settlement. Specifically, the court found the settlement "to be fair and reasonable in terms of giving full consideration to all of the issues involved in this litigation" and "in its terms and amounts." The court further found that "Sergei Seryogin Yates understands and has received fully adequate and sufficient advice and counsel from his attorneys regarding the

---

[1] Because many of the individuals referenced in this case have the surname Yates, to avoid confusion, Plaintiff is referred to by his first name. No disrespect is intended.

settlement amount and terms, and has entered into the settlement knowingly and voluntarily." (Dauber Decl. Ex. 1, Am. Compl. Ex. B.) The settlement resulted in the establishment of an insurance trust and a settlement trust, the value of which was approximately $9,000,000 at its inception.

Similarly, the court approved the settlement of the wrongful death action brought against Sergei's father's estate by Sergei's Aunt, Susan Whipple, on behalf of Sergei's mother's estate. Sergei was the sole beneficiary of his mother's estate. That settlement resulted in the payment of $1,800,000 by his father's estate to his mother's estate, of which Sergei was the beneficiary. The funds were used to purchase an annuity for Sergei that pays him over $6,000 per month for his life. With respect to the settlement of the wrongful death action, the court also found that "Sergei Seryogin Yates understands and has received fully adequate and sufficient advice and counsel from his attorneys regarding the settlement amount and its terms, and has entered into the settlement knowingly and voluntarily." The court found the wrongful death settlement "fair and reasonable based on the evidence submitted and in consideration of all of the issues involved in the litigation, and in the terms and amounts of the settlement." (Dauber Decl. Ex. 1, Am. Compl. Ex. B.)

Despite the court's clear findings that the settlement was fair and reasonable, that Sergei knowingly and voluntarily agreed to the settlement and that Sergei received and understood the fully adequate and sufficient advice provided by his attorneys, Sergei only now, nine years later, has had a change of heart and is charging his counsel, Robert Del Tufo, with legal malpractice. Not only is the malpractice claim baseless because Mr. Del Tufo provided excellent representation that resulted in Sergei receiving more than ten million dollars from his parents estate, but Sergei totally ignores the findings and order of the court to the contrary and the six

year statute of limitations that would require any such legal malpractice claim to be filed no later than September 28, 2010. It is apparent from the face of the Amended Complaint that the legal malpractice claim is frivolous and totally devoid of merit.

In addition, Sergei alleges that somehow Mr. Del Tufo breached a duty to Sergei when PNC Bank, the corporate trustee that administers his trusts together with trustees Roy D. Yates (Sergei's half brother) and Winifred Benchley (a family friend), provided Sergei a mortgage in connection with Sergei's purchase of a home in Pennsylvania. As Mr. Del Tufo is not a trustee of any of the trusts at issue, he had no duty to Sergei regarding the administration of the trusts. Furthermore, no harm is alleged as a result of the mortgage. No allegation is made that the interest rate is above market rate or that somehow Sergei has been injured by receiving the mortgage for the home he decided to purchase. Accordingly, without a duty owed or an injury alleged, the claim is entirely baseless.

Finally, Sergei alleges that somehow Mr. Del Tufo should be responsible for the apparent theft of trust monies by the trustee managing his trust in Wyoming. Proceedings in Wyoming indicate that the trustee, who was a Wyoming attorney and close friend of Sergei's, absconded with in excess of $600,000. Once again, Mr. Del Tufo had no obligation or responsibility with respect to Sergei's mother's trust and certainly had no duty to watch over an attorney managing a trust thousands of miles away.

It is clear from the face of the Amended Complaint that the claims against Mr. Del Tufo are without merit and are a belated attempt at an end run around a previously pending action in New Jersey State Court, which Plaintiff failed to disclose to this Court as required by the local rules. For over 10 years, The Superior Court of New Jersey, Chancery Division-Probate part, has administered estates, trusts and related matters in which Sergei had beneficial interests.

("State Court action")  The Federal Complaint was filed only after the trustees of Sergei's trust brought an action for an accounting in the State Court action.  This Federal case was filed in an effort to derail the State Court action.  Indeed, shortly after filing the complaint in this case, the Plaintiff filed a motion to stay the State Court action until this case was completed.  The State Court denied the motion (Dauber Decl. Ex. 2.) and found that the children of Sergei, who are the beneficiaries of the remainder of the trusts, are necessary parties to any actions involving the trusts.  Moreover, the trustees are parties in both this case as well as the State Court action and Sergei seeks similar relief in each case. Indeed, Sergei has filed a motion in the State Court action to allow him to file a counterclaim against the trustees that is virtually identical to the factual allegations and counts one and two of the complaint filed in this Court. (Dauber Decl. Ex. 4.) For all of the reasons set forth herein, the complaint and its amendments should be dismissed with prejudice.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Sergei Seryogin Yates is the adopted son of Charles and Anya Yates.  (Dauber Decl. Ex. 1, Am. Compl. Ex. C.)  Charles and Anya Yates, together with their two natural children, Elena and William, died in a plane crash on October 6, 2000.  *Id.*  Anya Yates died intestate and Sergei was her only heir as her other two children died simultaneously with her and her husband. In addition to Sergei, Charles was survived by five children from his first marriage.  *Id.*  From 2000 to 2004, Robert Del Tufo was counsel of record to Sergei Yates in the will construction and wrongful death case following the death of his parents.   Sergei's five half siblings, were represented in the dispute by Pitney Hardin LLP. *Id.*

The issues facing the parties in the will contest action, as well as a description of other trusts left to the various children of Charles and Anya Yates, are described in detail in the

4

Memorandum of Understanding Settlement Agreement, which is attached as Exhibit C to the Amended Complaint and is also appended to the Declaration of Edward J. Dauber.[2] In August 2004, the will construction and Wrongful Death Action were settled and approved by the Superior Court. *Id.* With respect to the settlement of the Wrongful Death Action, brought by Anya Yates's Estate (on behalf of Sergei) against Charles Yates's Estate, Charles's Estate agreed to pay Anya's Estate $1.8 million from Charles's residuary described above. *Id.* Accordingly, before anything and everyone else, Sergei was the recipient of close to $2 million from Charles's residuary estate. These monies inured to Sergei's benefit by the purchase of an annuity that pays him a monthly income tax free stipend of $6,225.84 for life with a 20-year term certain guarantee and survivorship. With regard to the settlement of the action involving the interpretation of Charles Yates's Will, instead of receiving only 5% of the residuary of Charles's estate as provided for in Charles's Will, Sergei shared equally in the entire residuary estate with the five Yates children from Charles's first marriage. Sergei thus received a share equal to almost 17% of the entire residuary. The assertion in the Federal Complaint that Sergei was entitled to 45% is belied by Charles Yates's testamentary documents. (Dauber Decl. Ex. 1, Am. Compl. Ex. C, Mem. of Understanding Ex. 3, Will of Charles Yates.)

On August 16, 2004, the Superior Court of New Jersey entered an order approving the settlement and made specific findings concerning the settlement. After taking testimony from Sergei, the Court entered an order finding that the settlement was fair and reasonable with regard

---

[2] Charles left a Will under which 50% of the residuary estate passed in equal shares to the five Yates children from Charles's first marriage, 45% of the residuary was left to Elena and William (to be equally divided between them) and 5% of the residuary was left in trust for Sergei. The trust provisions contained severe restrictions. For example, Sergei was expressly barred from challenging Trustee decisions and also was denied the power to dispose of the remainder. Under the Will, the remainder of this trust passed not to Sergei's descendants but to the other members of Charles Yates's family. While 45% of the residuary was bequeathed to William and Elena, the Will failed to address how this 45% would be distributed in the event that both Elena and William would die simultaneously with their parents. (Dauber Decl. Ex. 3)

to the terms and the amount of the settlement. (Dauber Decl. Ex. 1, Am. Compl. Ex. B.)  The Court specifically found that "Sergei Seryogin Yates understands and has received fully adequate and sufficient advice and counsel from his attorneys regarding the settlement amount and terms, and has entered into the settlement knowingly and voluntarily." *Id.*

Sergei is currently the beneficiary of two trusts involving Charles and his Estate:  an insurance trust Charles Yates created during his lifetime and a "settlement trust" created as part of the 2004 settlement.  Defendants PNC Bank, Roy D. Yates and Winifred Benchley are the trustees (collectively "Trustees") for these trusts.  Sergei is also the beneficiary of a trust he, himself, created to administer monies received from the Estate of Anya Yates, with his descendants as remaindermen (the "Wyoming Trust").  Sergei appointed a Wyoming attorney who had represented him in an unrelated matter as the trustee of that trust.[3]  There is no dispute that Sergei received a total of approximately $11,000,000 from his parents' estates.

For over 10 years, the Superior Court of New Jersey, Chancery Division-Probate Part, Mercer County has administered the estates and trusts in which Sergei had, and has, beneficial interests.  The proceedings over these years have generated a voluminous record, which is on file in the Mercer County Surrogates Office.

In February 2013, the Trustees of the various trusts initiated proceedings in the State Court to settle their accounts.  Over Sergei's objection, the Court appointed a Guardian ad Litem to represent the interests of Sergei's three minor children and unborn issue because the remainder interests of the children in the Trusts were adverse to those of Sergei as life beneficiary.  In making the appointment, the State Court found the minor children to be indispensible parties. (Dauber Decl. Ex. 2.)

---

[3] Sergei now alleges that the Wyoming attorney stole approximately $600,000 from the trust Sergei established.

In April 2013, Sergei moved to adjourn the accounting action for the stated purpose of providing his attorneys an opportunity to file exceptions to the Trustees' accounts. Counsel requested more time due to the complex and voluminous record compiled in the lengthy period of trust administration. Specifically, Sergei's counsel's adjournment request represented that they were in the process of gathering the information necessary to respond to the order to show cause for the accounting. *Id.*

On June 26, 2013, instead of filing a response to the order to show cause, Plaintiff filed a complaint with this Court (the "Federal Complaint"), seeking essentially the same relief that he could have sought in the State Court action. In violation of Local Fed R. 11.2, he failed to advise the Federal Court of the pendency of the State Court action, and he also failed to join his three minor children, the remaindermen, as parties to this Federal case. In addition to the breach of fiduciary duty claims asserted against the Trustee defendants, the Federal Complaint alleged negligence against Mr. Del Tufo and Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), where Mr. Del Tufo is Of Counsel. The Federal Complaint appears to be reactionary and brought in retaliation for the Trustees' decision to seek an accounting in State Court. Plaintiff filed an Amended Complaint on July 22, 2013 (the "Amended Complaint"), dropping Skadden as a named defendant, but proceeding with the same meritless allegations against Mr. Del Tufo that were asserted in the Complaint.

On July 3, 2013, Sergei moved before the State Court to stay the State Court action because of the pendency of his subsequent federal filing. The State Court denied the motion on August 6, 2013. (Dauber Decl. Ex. 2) The State Court also afforded counsel additional time to file exceptions. Following the State Court's ruling, Sergei filed a motion in the State Court action seeking to file a counterclaim that essentially repeats most of the factual allegations and

the first and second counts of the Federal Complaint.   (Dauber Decl. Ex. 4)   Hence the proceedings in State Court, where Sergei can seek adjudication of all his perceived injuries, is ongoing.[4]

While this Court should dismiss the Complaint for the many reasons set forth herein, if the Court is not inclined to dismiss the case. the principles of abstention, judicial economy and common sense make it crystal clear that the State Court, and not the Federal Court, should deal with all of these matters in the first filed proceeding.   It would be stretching valuable and diminished resources to supplant the State Court and take on the review of a massive, unfamiliar record of over 9 years of proceedings.

According to the Federal Amended Complaint, "[b]eginning in or about 2003, Robert Del Tufo served as legal counsel to Sergei for a number of matters, including the Will Construction Action, the Wrongful Death Action, guardianship proceedings, the creation of the Settlement Trust, and the creation of Anya's Estate Trust."   (Dauber Decl., Ex. 1, Am. Compl. ¶70.) Plaintiff asserts a negligence claim, alleging that Mr. Del Tufo "failed to protect his interest or to

---

[4]     The State Court's description of this series of events bears repeating:

"In any event, part of the procedural history here is that in -- at the -- also at the end of April we had the Folkman Law Office making an appearance on behalf of Sergei Yates and seeking an extension of time to file their exceptions to the accounting.  That was how their request for the extension was made to the Court on the basis that the accounting involved two trusts over a period of 13 years and that the Folkman office was in the process of gathering all necessary information to prepare responsive pleadings to the order to show cause.  And so it was deadlines of those responsive pleadings that were asked to be extended.  And notably the -- there was no response to the order to show cause filed within the extended time.  Instead, that's when federal litigation was filed -- the -- and the complaint -- and the amended complaint have both been provided to the Court.

So the sole basis for the extension was the need to prepare responsive pleadings, but that's not what happened.  Instead, we had the filing of the federal complaint with the application for a stay.  So while it's clear under New Jersey case law that Sergei Yates could have filed his exceptions to the accounting and sought to add the claims against the trustees for breach of fiduciary duty and, you know, looking at <u>Higgins</u> and <u>Tuzio</u> (phonetic), they could also have raised legal malpractice claim against Mr. Del Tufo.  At least those were options.

It was Sergei Yates' choice to go to federal court instead.  So the fact that we have two pieces of litigation here with claims that -- some claims that overlap was the specific choice of Sergei Yates and now four months after the accounting action has been filed, Sergei Yates is coming in and saying -- asking the probate court to stay any further action on the accountings so that he can proceed in federal court . . . ." (Dauber Decl. Ex. 2.)

adequately and thoroughly apprise him of his rights." (Dauber Decl., Ex. 1, Am. Compl. ¶1.) While making these baseless claims against Mr. Del Tufo, Plaintiff nevertheless acknowledges the Order Approving Settlement (Dauber Decl. Ex. 1, Am. Compl. Ex. B) in which the Court approved the settlement and, after taking testimony from Sergei, made findings that the settlement was fair and reasonable. *Id.*

Mr. Del Tufo provided the Plaintiff with stellar representation in each of these matters, and the State Court's 2004 order and findings set forth therein affirm that. Plaintiff has also asserted a claim against Mr. Del Tufo in connection with the Trustees approval of a mortgage with PNC Bank (the commercial trustee) for the purchase of a home for Sergei and his wife. The Plaintiff claims, without alleging any damages, that it was a conflict of interest for PNC to provide the mortgage. Plaintiff absently includes Mr. Del Tufo in this claim even though he is not a trustee and made no decisions and had no authority to make decisions regarding the mortgage. Furthermore, Plaintiff added the baseless claim, *on information and belief,* that Del Tufo had a meretricious relationship with the trustee who administered Sergei's mother's trust in Wyoming, and who allegedly stole more than $600,000 from the trust. This unfounded attack was obviously intended to harass and shake down Mr. Del Tufo and his law firm. There is not and there will never be any evidentiary support for the meretricious relationship claim or for any of the other allegations made against Mr. Del Tufo, all of which are offensive and unfounded.

For all of the reasons set forth herein, the Amended Complaint should be dismissed in its entirety with regard to the claims asserted against Mr. Del Tufo. In the alternative, we urge the Court to abstain from exercising jurisdiction in favor of the State Court.

**ARGUMENT**

**POINT ONE**

**THE PLEADINGS FAIL TO STATE A CLAIM AND THE
COMPLAINT SHOULD BE DISMISSED**

In deciding a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, courts are to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief". *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation omitted). Such a motion should be granted if plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Defendants have the burden on such a motion to demonstrate that plaintiffs cannot succeed on their articulated causes of action. *Rajenda v. Chertoff*, 2009 No. 07-5988 (SRC), WL 331420, at *1 (D.N.J. Feb. 10, 2009) (citing *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005)). The issue before the Court "'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

While the Court should accept well-pled allegations as true for the purposes of the motion, it may not accept as true bald assertions or legal conclusions set forth in the complaint. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Finally, in deciding the motion to dismiss, the Court may consider, in addition to the allegations of the complaint, all documents specifically referenced in the complaint, exhibits attached to the complaint, documents that form the basis of the claim, and all matters of public record and facts and circumstances susceptible to judicial notice. *Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256,

259 (3d Cir. 1998); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192,

1196 (3d Cir. 1993); *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir.).

In this case, the Amended Complaint, the documents attached to the Amended Complaint

and the documents in the public record demonstrate that the claims alleged by Plaintiff are not

only baseless, they are frivolous.

**A.    Plaintiffs' Claims Are Clearly Time-Barred**

Filing a complaint when the statute of limitations has clearly run, without any cognizable

argument to toll or extend the period, not only requires dismissal but implicates Rule 11. *See,*

*e.g., Levy v. Aaron Faber, Inc.,* 148 F.R.D. 114, 122-23 (S.D.N.Y. 1993) (sanctioning plaintiff's

counsel where "had plaintiff's counsel conducted a reasonable inquiry into the law . . . he would

have had ample reason to conclude that many of plaintiff's claims . . . were barred by the

relevant statute of limitations"); see also *Gautreau v. A.O. Smith Corp.,* 34 F. App'x 962 (5th

Cir. 2002) (affirming imposition of sanctions by district court where "statutes of limitation were

such an obvious affirmative defense to the claims presented that the suit should not have been

filed in the first place").

As acknowledged in the Federal Amended Complaint, Mr. Del Tufo represented Sergei

in connection with the will construction case and the Wrongful Death Action.  Both matters were

resolved in September 2004.  "A legal malpractice action is rooted in the tort of negligence and

'accrues when an attorney's breach of professional duty proximately causes plaintiff's

damages.'" *Rogers v. Cape May Cnty. Office of the Pub. Defender*, 208 NJ 414, 421 (N.J. 2011)

(quoting *Grunwald v. Bronkesh,* 131 NJ 483, 492 (N.J. 1993)).   New Jersey's statute of

limitations with regard to legal malpractice is the six year statute of limitations for actions

involving tortious injury to the rights of another. N.J. Stat. Ann. § 14:1 (West 2013); 208 NJ at

422; *McGrogan v. Till,* 167 NJ 414 (N.J. 2001).  Thus, any claim for legal malpractice against

Mr. Del Tufo expired no later than September 2010.  Despite these very clear and obvious dates, the Complaint makes stale allegations against Mr. Del Tufo in connection with his representation of Sergei in the will construction and wrongful death suits.  Any such claims, as baseless as they are, are time-barred and there is no excuse for filing these claims nearly three years beyond the expiration of the statute of limitations.

**B.      Plaintiffs' Claims Are Barred By Equity And Principles Of Estoppel**

It is equally as egregious that in his criticism of the settlement reached in 2004, Plaintiff has totally ignored his own sworn testimony and the findings and conclusions of the State Court. The essence of Plaintiff's malpractice claim against Mr. Del Tufo is that the 2004 settlement did not net him enough money and that he inexplicably deserved more.  One has to wonder if Plaintiff or his counsel ever even bothered to read Charles Yates's will or testamentary trusts, (Dauber Decl. Ex. 3) or the Order entered by the Superior Court (Dauber Decl. Ex. 1, Am. Compl. Ex. B.)  Certainly if they had, it would be crystal clear that the settlement yielded an excellent result for Sergei. Under Charles Yates's Will, 50% of the estate would be divided among his children by his first marriage.  Sergei was to receive only 10% of the other half of the estate, in other words, 5% of Charles Yates's residuary estate.  As set forth in the documents attached to the Complaint, instead of receiving the small sum provided by his father's will, Sergei received substantially more, or a total of a 1/6 interest in the residuary estate, and received that share in a trust with terms much more favorable to Sergei than those of Charles' will.  As the Superior Court recognized in the Order Approving Settlement, *id.,* the settlement of the will construction action, as set forth in the Memorandum of Understanding (Dauber Decl. Ex. 1, Am. Compl. Ex. C), is "fair and reasonable in terms of giving full consideration to all of the issues involved in [the] litigation" and the "settlement is fair and reasonable in its terms and amounts." (Dauber Decl. Ex. 1, Am. Compl. Ex. B.)   The Court heard the testimony of Sergei and

12

specifically found that Sergei understood and received adequate and sufficient advice from counsel regarding the settlement and that he entered into it voluntarily. The Court made similar findings with regard to the Wrongful Death Action filed on behalf of Sergei's mother against his father's estate. *Id.*

The Superior Court in 2004 recognized that Sergei understood the settlement and "received fully adequate and sufficient advice and counsel from his attorneys regarding the settlement amount and terms, and has entered into the settlement knowingly and voluntarily." *Id.* This case is controlled by *Puder v. Buechel*, 183 NJ 428 (NJ 2005). There, the New Jersey Supreme Court held that where a plaintiff acknowledged on the record that her settlement of a lawsuit was fair and that she was satisfied with the outcome, she was barred on an equitable basis from challenging that settlement by way of a malpractice action against her counsel. *Id.* at 437. While generally a settlement does not bar a legal malpractice claim by a client against an attorney, in *Puder* the court recognized an equitable exception to the general rule. In *Puder* the New Jersey Supreme Court found that the plaintiff, who had agreed to a settlement on the record, was "bound by her representation to the trial court that the . . . settlement agreement was 'acceptable' and 'fair'". *Id.* at 437. The Court also considered the public policy in favor of conclusive settlements and the passage of almost nine years since the first negotiated settlement and barred the Plaintiff from pursuing her counsel for legal malpractice.

Here, Sergei testified regarding the settlement reached on his behalf and the Superior Court made specific findings regarding the settlement. In the Order Approving Settlement, (Dauber Decl. Ex. 1, Am. Compl. Ex. B), the State Court found the settlement to be 'fair and reasonable in terms of giving full consideration to all of the issues involved in this litigation, and

13

finds that the settlement is fair and reasonable in its terms and amounts." The Court further found that Sergei understood the settlement and entered into it knowingly. *Id.*

Sergei cannot, nine years later, repudiate the testimony he provided in 2004 or the findings made by the Superior Court as a result of that testimony. As the New Jersey Supreme Court recognized in *Puder*, a party is bound by his or her testimony before the trial court concerning the acceptability and fairness of a settlement agreement. Equity precludes that party from bringing a malpractice action against the attorney who negotiated that settlement.

**C.    Mr. Del Tufo Is Not A Trustee**

Although Plaintiff's complaint does not name Mr. Del Tufo in the first two counts for breach of fiduciary duty or for removal of the trustees, the complaint nevertheless blurs the roles of the various defendants when it alleges that Mr. Del Tufo breached a duty of care by permitting Sergei to enter into a mortgage with PNC Bank. Mr. Del Tufo represented Sergei in a lawsuit. Plaintiff has the burden to establish the duty owed, and the extent of an attorney's liability to his client necessarily depends upon the nature of this undertaking. *See Lamb v. Barbour*, 188 N.J. Super. 6 (App. Div. 1982). Mr. Del Tufo was not and has never been a trustee of any of Sergei's trusts. Mr. Del Tufo had no duty or right to second guess Sergei's or the trustees' decisions regarding the purchase of a home for Sergei and his family or how the home should be financed. Furthermore, the complaint does not allege that the mortgage was anything other than a standard mortgage with a standard rate of interest. Sergei has not been damaged by having a mortgage with PNC Bank rather than a mortgage with any other bank; consequently he has suffered no injuries as a result of having the mortgage. To the extent that Plaintiff may not have been able to get a mortgage elsewhere due to his lack of a solid employment history, the mortgage has only been a benefit to the plaintiff. Legal malpractice is a variation of the cause of the tort of

14

negligence, thus a plaintiff must establish a deviation from the standard of care, proximate causation and damages. *See Jerista v. Murray*, 185 N.J. 175 (2005); *Garcia v. Kozlov, Seaton, Romanini, & Brooks, P.C.*, 179 NJ 242 (2004). Injury in fact is an element of the cause of action, and without injury the cause of action fails. *Id.*; 188 N.J. Super. at 13.

While Mr. Del Tufo had no duty to the Plaintiff regarding the mortgage, even if he did, Plaintiff has sustained no damage or injury as a result of obtaining the mortgage from PNC Bank. Accordingly, there can be no claim against Mr. Del Tufo for legal malpractice or negligence with regard to the PNC Bank mortgage.

**D.   The Vague Allegations Regarding The Wyoming Trustee Are Baseless And Fail To State A Claim**

In connection with the trust Sergei created from the proceeds from his mother's Estate (the "Wyoming Trust"), Sergei named a single trustee, Jody Vannoy, a Wyoming attorney, whom Sergei knew for many years and with whom he was very close. As set forth in the Amended Complaint, however, many years after the trust was established, suspicions arose that Ms. Vannoy was mishandling the trust money. The Amended Complaint references findings in a State Court action in Wyoming that Ms. Vannoy had stolen over $600,000 from the Wyoming trust and that her whereabouts are unknown. While this is an extremely unfortunate scenario, Ms. Vannoy and her misdeeds are not before this Court and a court in Wyoming has already adjudicated the claims regarding Ms. Vannoy. Sergei has made allegations against the trustees of his other trusts, suggesting that they should have known about or discovered Ms. Vannoy's misdeeds.

Plaintiff's allegation that Mr. Del Tufo breached some duty to Sergei because of Ms. Vannoy's actions falls flat. While it indeed was Sergei who selected Ms. Vannoy as the trustee (she had previously represented him in unrelated matters in Wyoming), even if it were true that

Mr. Del Tufo had recommended that Sergei select Ms. Vannoy as a trustee, this does not make him negligent with respect to Sergei.  Where an attorney refers another attorney he cannot "be found negligent, after verifying [the attorney] was a licensed practitioner, simply for failing to inquire further into [the attorney's] reputation for honesty." *Tormo v. Yormark,* 398 F. Supp. 1159, 1169 (D.N.J. 1975).  "An actor generally has no duty to use care to prevent harm to another through the criminal acts of third parties not subject to his control." *Id.*  Plaintiff has not alleged, and nor can he, that Mr. Del Tufo had any knowledge of Ms. Vannoy's transgressions regarding Sergei's Wyoming Trust.  In short, Plaintiff cannot set forth a cause of action for legal malpractice with regard to the actions taken by the Wyoming trustee.

Outrageously, the amended complaint also attempts to connect Mr. Del Tufo with Ms. Vannoy's wrongdoing.  Plaintiff's decision to name Mr. Del Tufo, one of New Jersey's most prominent attorneys, and, initially, Skadden, one of the world's largest law firms, in what should be nothing more than a dispute between a beneficiary and trustees in Surrogates Court, evinces their intent to draw attention to the case through the use of well-known names that would pique the media's interest.  The publicity sought by Plaintiff and his counsel and the correspondingly negatively effect on Mr. Del Tufo, evidence an improper motivation under Rule 11.  *See Baker v. Urban Outfitters, Inc.,* 431 F. Supp. 2d 351, 357-358 (S.D.N.Y. 2006) (imposing sanctions due to "improper motivation" where plaintiff and his counsel "filed and maintained [a] suit in an attempt to . . . garner publicity for [plaintiff's] agent and for his lawyer.").  Indeed, the inflammatory and embarrassing facts alleged against Mr. Del Tufo – *e.g,.* that "upon information and belief, Del Tufo had a meretricious relationship" with the trustee of another trust of which Plaintiff was the beneficiary (*i.e.,*  Ms. Vannoy) (Dauber Decl., Ex. 1, Amended Complaint. ¶82) – confirm Plaintiff's improper intent to harass Mr. Del Tufo.  *See Hoatson v. N.Y. Archdiocese,*

No. 05 Civ. 10467(PAC), 2007 WL 431098, at *15 (S.D.N.Y. Feb. 8, 2007), *aff'd* 280 F. App'x 88 (2d Cir. 2008).  To assert an untrue accusation as damaging as this one against a married man with an impeccable record of dedication to his clients and public service to both his state, as Attorney General for the State of New Jersey, and his country, as United States Attorney for the District of New Jersey, over the course of a more than fifty-year career, based on nothing more than "information and belief," is a deliberate and irresponsible violation of Fed. R.Civ. P. 11(b) (1) and (3).

Clearly, as the Court observed in another matter, "plaintiff[s] and . . . counsel chose the objects of this . . . lawsuit with little if any regard for the basis of conclusory allegations or the harm which a wrongfully-named defendant might suffer." *Lazzarino v. Kenton Associates., Ltd.,* 998 F. Supp. 364, 367 (S.D.N.Y. 1998).  There can be no excuse for making the blatantly false claim that Mr. Del Tufo had a "meretricious" relationship with a trustee who allegedly absconded with more than $600,000 of trust assets under the guise of making it on "information and belief."   There is absolutely no "information" that could lead to the reasonable "belief" that this outrageous allegation is true.  It is false and the Plaintiff and his counsel know it is false.

### POINT TWO

### WHILE THE AMENDED COMPLAINT SHOULD BE DISMISSED, IF IT IS NOT, THE FEDERAL COURT IS AN INAPPROPRIATE VENUE FOR THIS CASE AND THE ISSUES SHOULD BE DECIDED IN THE STATE COURT

**A.      This Court Should Abstain From Exercising Jurisdiction**

Since at least 2004, the Superior Court of New Jersey has had jurisdiction over and monitored the administration of the Yates trusts.  In February 2013, the Trustees of Sergei's various New Jersey trusts filed a motion in the Superior Court matter for an accounting of the

trust accounts.   Counsel on behalf of Sergei requested additional time from that Court to file objections.   Instead of using the time to prepare objections to the accounting, Sergei filed the complaint in June 2013 and then the amended complaint in July 2013 with the Federal Court. (Dauber Decl. Ex. 2, Tr. of Proceeding before the Hon. Mary C. Jocobson, A.J.S.C.)   After the filing of the initial Federal complaint, Sergei filed a motion with the Superior Court of New Jersey to stay or dismiss the accounting action pending the resolution of the Federal Court action. Sergei's motion was denied by the State Court.   It is clear from these actions that Sergei's filing of the federal action was done to interfere with and delay the State Court action.   *Id.*

If this Court does not dismiss this Federal Case in its entirety, then Mr. Del Tufo urges the Court to abstain from moving forward with this case.   The State Court has had jurisdiction over the trusts at issue since the will and trusts of Sergei's parents were submitted to probate shortly after their deaths.   That same court oversaw the settlement of the issues between Sergei and his half siblings and his mother's relatives.   That same court continues to have jurisdiction over the management of the trusts.   The claims alleged and relief sought by Sergei in the State Court action are also sought in the Federal case.   Notably, Sergei's Federal complaint and amended complaint fail to certify, as required by Local Rule of Federal Procedure 11.2, that the matter in controversy is the subject of another action pending in another court.

Furthermore, there can be no question that the issues in the State Court proceeding are related, if not identical to, the issues alleged in the Federal action.   Following the State Court's denial of Sergei's motion to stay those proceedings, Sergei filed a motion for permission to file a counterclaim in the State Court case.   The proposed counterclaim sets forth the same common allegations as the Federal amended complaint and the two proposed counts in the Superior Court counterclaim are identical to the first two counts of the Federal amended complaint.   Clearly,

Plaintiff admits that the facts and issues are the same in each case. Furthermore, while the proposed State Court counterclaim does not include the one count of legal malpractice alleged against Mr. Del Tufo, the Judge overseeing the State Court case stated on the record that the State Court case certainly could include the issues regarding Mr. Del Tufo. (Dauber Decl. Ex. 2, Tr. of Proceedings before the Hon. Mary C. Jacobson, A.J.S.C.)

By filing the Federal case, Plaintiff has ignored the long recognized rule that the court "which first obtains possession of the controversy ought to be allowed to proceed and dispose of it without interference". *Trustees of Princeton Univ. v. Trust Co. of New Jersey*, 22 NJ 587, 598 (1956). Known as the "first filed" rule, the Third Circuit recognizes that "'[i]n all cases of concurrent jurisdiction, the court which first has possession of the subject must decide it." *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929-930 (3d Cir. 1941); see *also, Sensient Colors, Inc. v. Allstate Ins. Co.*, 193 NJ 373, 387 (2008) (litigation of similar lawsuits in multiple jurisdictions is wasteful of judicial resources and anathema in a federal system that contemplates cooperation among the states, therefore comity analysis begins with a presumption in favor of the earlier filed action).

In appropriate circumstances, a Federal Court will abstain from hearing a matter in favor of another court. "Abstention is a judicially created doctrine that permits a federal court to abstain from accepting jurisdiction over a matter when a parallel state proceeding addresses the same matter." *Chiampi v. Bally's Park Place, Inc.*, No. 05-3395 (JEI), 2007 U.S. Dist. Lexis 9010 (D. NJ 2007) (citing *Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, (1976)). Under the doctrine enunciated by the United States Supreme Court in *Colorado River*, "federal courts must consider the principles regarding "federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdictions". *Id.*

19

These principles include "'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation'". 424 U.S. at 817, quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.,*342 U.S. 180, 183 (1952).

Under the *Colorado River* doctrine, the Court must first decide whether the state and federal actions are parallel. *BIL Mgmt. Corp. v. N.J. Econ. Dev. Auth.,* 310 Fed. Appx. 490, 491 (3rd Cir 2008). The initial question is whether there is a parallel state proceeding that raises substantially identical allegations, claims and issues. See *Yang v. Tsui*, 416 F. 3d 199, 204 (3d Cir. 2005). Once the Court finds that the Federal and State cases are parallel, there are six factors that the Court should consider when deciding whether abstention is appropriate:

> (1) which court first assumed jurisdiction over property that is the subject of the litigation; (2) the convenience of the federal forum;
> (3) the desirability of avoiding piecemeal litigation;
> (4) the order in which jurisdiction was obtained by the concurrent forum;
> (5) whether, and to what extent, federal law provides the rules of decision on the merits; and
> (6) the adequacy of the state proceeding in protecting the rights invoking federal jurisdiction

2007 U. S. Dist. LEXIS 9010, p.2, citing 424 U. S. at 818-19. It is also important to note that "[n]o one factor is necessarily determinative" when a court considers whether abstention is appropriate. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 15, 103 S. Ct. 927, 74 L.Ed.2d 765 (1983).

In this case there is no question that the State Court matter was the first filed. The case has been monitored and overseen by the State Court since the global settlement was entered into in 2004. The trusts that are the crux of that settlement have one institutional trustee and two individual trustees, all of whom are parties to this Federal case and the State Court case. The claims and issues in the State Court case and this Federal case are virtually identical. In each,

Sergei alleges that the defendants breached their duty to him and, as a result, he has not received what he was entitled to from his parents' estate. A comparison of the Federal amended complaint and the proposed State Court counterclaim show that the underlying factual and legal issues in each case are the same. Indeed, in denying Sergei's motion for a stay pending the outcome of the Federal case, the State Court found that all of the issues could be consolidated and decided in the State Court case. Plaintiff was even criticized by the State Court Judge when he used the time requested to provide objections to an accounting to instead file the Federal action. As the State Court judge stated: "the sole basis for the extension was the need to prepare the responsive pleadings, but that's not what happened. Instead, we had the filing of the federal complaint with the application for a stay. So while it's clear under New Jersey case law that Sergei Yates could have filed his exceptions to the accounting and sought to add the claims against the trustees for breach of fiduciary duty and, you know, looking at Higgins and Tuzio (phonetic), they could also have raised legal malpractice claim against Mr. Del Tufo. At least those were options." (Dauber Decl. Ex. 2) The State Court recognized that it was Sergei who created the problem of concurrent jurisdiction and that Sergei could have joined, and can still join, all of his issues in the State Court proceeding. Furthermore, it is noteworthy that the State Court has peculiar familiarity in dealing with administration and adjudication of estate matters. The issues raised by Sergei are matters involving state law, and the federal court has no particular expertise in the subject matter.

Considered as a whole, the circumstances of this case clearly weigh in favor of abstention. The State Court, with its peculiar expertise in estate and probate law is a more favored forum and adjudication in the State Court case will prevent waste of judicial resources and the possibility of inconsistent holdings. The State Court was not only the first court where

the issues were raised, it is the only one to have made determinations and findings. For all of these reasons, in the event that this Court does not dismiss the case in its entirety, this Court should exercise abstention in favor the Superior Court of New Jersey.

**B.      The Federal Court Case Is Plagued With Problems That Bar Jurisdiction**

The probate exception to diversity jurisdiction bars this Federal action. The probate exception precludes the exercise of jurisdiction by a Federal Court to probate or annul a will, administer a decedent's estate or assume *in rem* jurisdiction over property that is in the custody of the probate court. See *Three Keys Ltd. v. SR Util. Holding Co.,* 540 F. 3d 220, 226 (3d Cir. 2008). In this case, Sergei is challenging the administration of his Trusts, is seeking the removal of fiduciaries and is asking the Federal Court to assume in rem jurisdiction over the corpus of the trusts. As such, the claims asserted against the trustees are precluded by the probate exception to jurisdiction.

Finally, it should be noted that Sergei has failed to name the remainder beneficiaries of his trusts, his children, as parties to this Federal action. The State Court has already recognized that with respect to the Trusts, Sergei's interests are contrary to his children's interests, and has appointed a guardian ad litem to represent them. The State Court further recognized that unlike the federal proceeding, the interests of the remainder beneficiaries are represented in the State proceeding. Sergei and his counsel are well aware of this issue, having already addressed it in the State Court proceeding, but nevertheless ignore Fed R. Civ. P. 19, which requires the joinder of indispensable parties. Sergei and his counsel have ignored the requirements of Rule 19 because joinder of the children would defeat diversity jurisdiction. Where joinder of an absent party who is both necessary and indispensable would deprive the federal court of subject matter

jurisdiction, the Court must dismiss the complaint.  See *Tullett Prebon, PLC v. BGC Partners, Inc.*, No. 09-5365 (SRC), 2010 U.S. Dist. LEXIS 60783, *18 (D. N.J. June 18, 2010).

.       It is clear that the Federal Court is an inappropriate forum for the litigation of the issues raised by Sergei.   Jurisdictional impediments, including the probate exception and the impossibility of joining indispensible parties who would defeat jurisdiction, preclude the federal court from moving forward with this case.  Even if jurisdiction is perfected, the first filed State action must proceed first.


## CONCLUSION

For the foregoing reasons, Defendant Robert Del Tufo's Motion to Dismiss should be granted in its entirety and the amended complaint should be dismissed as against Robert Del Tufo.


GREENBERG DAUBER EPSTEIN & TUCKER
A Professional Corporation
One Gateway Center, Suite 600
Newark, New Jersey 07102

Attorneys for Defendant, Robert Del Tufo


By: s/ Edward J. Dauber

Dated:  September 30, 2013